**Clifford NUKAPIGAK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2915.**

Supreme Court of Alaska.

April 14, 1978.

---

Stephen R. Cline, Asst. Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

David Mannheimer, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION ON REHEARING

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

BURKE, Justice.

Following our affirmance of his sentences for rape and assault with a dangerous weapon, in *Nukapigak v. State*, 562 P.2d 697 (Alaska 1977), Clifford Nukapigak, the appellant, petitioned for rehearing. By direction of the court, the clerk entered an order permitting oral argument on the petition. Now, we reaffirm our earlier decision.

■ Nukapigak contends that we overlooked or misconceived a material fact or proposition of law.[1] Specifically, he complains of our holding that the trial court was entitled to consider evidence of other instances of antisocial conduct contained in the presentence report.[2] That information consisted of statements of various friends of Nukapigak, relatives, and members of the village council of Point Lay, Alaska, Nukapigak's home. We held that such information was sufficiently verified to be trustworthy and that it could, therefore, be considered in sentencing, where the defendant was given the opportunity to deny it or present contrary evidence.

The essence of Nukapigak's argument on rehearing is as follows: Persons interviewed by the author of the presentence report had no first-hand knowledge of the events described and, therefore, such information concerning his past antisocial behavior should not have been considered by the sentencing judge. He argues that the information, being second-hand, was not sufficiently "verified" to be a proper subject for the court's consideration in framing its sentence.

As noted in our first opinion, Nukapigak elected not to challenge the accuracy of the statements or to offer contrary evidence at the time of sentencing. That fact alone is sufficient to support our decision to affirm his sentences.

In *People v. Chi Ko Wong*, 18 Cal.3d 698, 135 Cal.Rptr. 392, 557 P.2d 976 (1976), the

---

1. Rule 27(a)(2), Alaska R.App.P., provides that in such case the court may order rehearing of a matter previously decided.

2. A copy of the presentence report was furnished to the defendant in advance of the sentencing hearing.

Supreme Court of California was presented with a similar issue. The defendant in that case attacked the lower court's sentencing procedures, claiming that portions of the presentence report "were without factual basis"; that police and other authorities, without justification, generally tend to brand as criminal Chinese youths on the basis of purported association with gang activity; and that there were all sorts of "allegations, unsupported, unfounded" in the report. Writing for the court, then Chief Justice Wright said:

> [D]efendant did not exercise his right to present any materials or call any witnesses to contradict, explain or otherwise rebut materials in the probation report and he is now foreclosed from raising such issues. [citations omitted].[3]

The court further noted that it is the defendant's obligation to comply with "procedures to establish the claimed unreliability of materials properly submitted for sentencing purposes; a mere claim of invalidity is insufficient."[4]

Such reasoning, which we consider sound, would have permitted us to affirm Nukapigak's sentences without any consideration of the veracity of the contested information. Nevertheless, recognizing that "[a] rational penal system must have some concern for the probable accuracy of the informational inputs in the sentencing process,"[5] we did consider the nature of that information and held that it was sufficiently verified, according to standards established by the past decisions of this court, to allow its consideration in sentencing. That view remains unchanged.

The fact that the presentence report contained statements by individuals concerning events which they may not have personally observed is not fatal to their use. The identity of each of those individuals was made known to Nukapigak and his attorney, giving them the opportunity to demand the right to examine them as to the basis for their statements and to contradict, explain or otherwise rebut their assertions. In the absence of any real indication that the information complained of might have been inaccurate, we believe that the sentencing judge was entitled to consider it; at least where, as here, that information, in and of itself, appears minimally trustworthy. We can think of no good reason to deprive him of that information.

We do, of course, urge that presentence reports be prepared using information from the best possible sources. Ordinarily, that will require the probation officer to interview those individuals having first-hand knowledge of the matters to be included in his report. On the other hand, we also believe, like the Supreme Court of the United States, that

> Highly relevant—if not essential—to [a trial judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to [a] trial. [footnote omitted].[6]

Thus, we decline to adopt an absolute rule prohibiting the use of second-hand information in presentence reports. However, we do caution the bench and bar that the result in this case could have been otherwise had there been a proper attack on the accuracy of the presentence report. *See United States v. Weston*, 448 F.2d 626 (9th Cir. 1971).

■ Moreover, while a trial judge enjoys broad discretion in sentencing and may take

---

**3.** 135 Cal.Rptr. at 409, 557 P.2d at 993.

**4.** *Id.*, 135 Cal.Rptr. at 410, 557 P.2d at 994.

**5.** *United States v. Weston*, 448 F.2d 626, 634 (9th Cir. 1971).

**6.** *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1949).

into account hearsay and other evidence that would be inadmissible at trial, there is a "clear drift" towards affording a defendant more due process and confrontation rights at sentencing. *United States v. Fatico*, 441 F.Supp. 1285 (E.D.N.Y.1977). Thus, we agree with the suggestion of the United States District Court for the Eastern District of New York, in *United States v. Fatico, supra*:

> [T]he Confrontation Clause requires at least this: the government cannot affirmatively prevent the defendant from examining under oath a declarant when the declarant's knowledge is offered by the government (1) at a critical stage of the criminal process, (2) as to crucial information that (3) directly affects a substantial liberty interest of the defendant. To deny defendant access to an informant whose declarations are introduced as evidence [in sentencing] is to affirmatively prevent the defendant from examining him. This requirement does not unduly burden the sentencing or other critical criminal processes, but it does afford the defendant his constitutionally mandated protection of confrontation.[7]

at 1297.

Again, we affirm Nukapigak's sentences.

BOOCHEVER, C. J., and RABINOWITZ, J., concurring separately.

MATTHEWS, J., not participating.[8]

BOOCHEVER, Chief Justice, with whom RABINOWITZ, Justice, joins, concurring.

I agree generally with the opinion on rehearing but have difficulty with reference to the burden that is placed on the defendant when a pre-sentence report contains harmful allegations of antisocial conduct based on hearsay. The opinion quotes from *People v. Chi Ko Wong*, 18 Cal.3d 698, 557 P.2d 976, 994, 135 Cal.Rptr. 392, 410 (1976), that: "A mere claim of invalidity is insufficient." The opinion does not make clear as to what a defendant must do to respond to hearsay allegations. I do not think that it is proper to require a defendant to prove the negative of such allegations. It seems to me that the appropriate procedure would be for a defendant to deny either orally or in writing allegations in a pre-sentence report which he believes to be untrue. A hearing would then be required at which time the state should present evidence of the disputed allegations. The defendant would also have the opportunity of presenting witnesses of his own and of testifying. The defendant has the right to exercise his fifth amendment rights, in which event, no unfavorable inferences should be made.

7. In *Fatico* the defendants objected to suggestions in the presentence report that they were members of the "Gambino Family," a reputed Mafia-like group. As a basis for this allegation, the government offered the testimony of an FBI agent who claimed that a reliable informer and "Gambino Family" member had told him about the defendants' alleged connection with the "Family." However, the government objected to cross-examination of the agent that might lead to disclosure of the informant's identity. Noting that membership in an organized crime family and other ties to professional criminal groups are material facts that would and should influence the court's sentencing decision, the court held that it would be a violation of the Due Process and Confrontation Clauses of the United States Constitution to consider such information in sentencing without allowing the defendants the opportunity to examine the declarant.

8. Justice Robert C. Erwin, who participated in the original decision in this case, retired after that decision was rendered and before the petition for rehearing was filed. Justice Warren W. Matthews, who replaced Justice Erwin, became a member of the court after the petition was argued.