Ernest **COCKERHAM**, Petitioner,

v.

**STATE of Alaska**, Respondent.

No. S–7251.

Supreme Court of Alaska.

Feb. 21, 1997.

Larry Cohn, Anchorage, for Petitioner.

James Hanley, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

At issue is whether a defendant's state and federal constitutional rights were violated by the superior court's failure to grant his motion for *in camera* review of alleged juvenile records of a prosecution witness testifying at sentencing. More generally, this case impacts a defendant's right to discovery at sentencing.

## II. FACTS AND PROCEEDINGS

On May 28, 1992, Ernest Cockerham was convicted of two counts of sexual assault of sixteen-year-old R.J.[1] Prior to sentencing, the State filed notice of its intent to request that Cockerham's sentence be enhanced, based on its contention that Cockerham had a history of similar assaultive behavior.[2] The State specifically alleged that Cockerham had sexually assaulted two young women, D.O. and R.E., prior to the assault for which he was then being sentenced. In addition, the State gave proper notice that D.O. and R.E. would testify at Cockerham's sentencing hearing.

Shortly before the hearing, citing Alaska Criminal Rule 16(b)(3), Cockerham moved for *in camera* review of R.E.'s "juvenile record,"[3] stating:

> R.E. is likely to have a juvenile record. If her juvenile record contains crimes of dishonesty those crimes would bear on the credibility of her testimony.

Cockerham later asserted in response to the State's opposition to his motion that there was an outstanding warrant for R.E.'s arrest as a runaway and, moreover, that the fact she had a guardian ad litem proved "the existence of either a CINA [Child in Need of Aid] or a delinquency case."

The superior court denied Cockerham's motion for *in camera* review, concluding that his showing that R.E. had allegedly committed a crime involving dishonesty was insufficient to justify a breach of her privacy interest and the public interest in keeping the files of minors confidential.[4]

---

1. The charge of second-degree sexual assault was subsequently vacated by the court of appeals on grounds unrelated to this appeal.

2. AS 12.55.155(f) provides in part:
 If the State seeks to establish a factor in aggravation at sentencing or if the defendant seeks to establish a factor in mitigation at sentencing, written notice must be served on the opposing party and filed with the court not later than 10 days before the date set for imposition of sentence.
 Alaska Criminal Rule 32.1(c)(1), governing presentence procedures for felony sentencings, reads in relevant part:
 Within ten days after receipt of the presentence report, each party shall file:
 (A) notice of any aggravating or mitigating factors, pursuant to AS 12.55.155 ... on which it intends to rely, supported by a written statement outlining, as an offer of proof, the evidence that counsel contends establishes each aggravating or mitigating factor ...; and

 (B) a memorandum giving notice of any evidence which the party intends to rely on at sentencing which was not previously presented at a prior proceeding in the case.... If the party intends to present additional witnesses, the memorandum shall include a list of these witnesses and a brief summary of their anticipated testimony....

3. Neither the State nor R.E.'s guardian ad litem has conceded that the juvenile records at issue in this case exist. For purposes of this appeal, however, we will simply refer to R.E.'s juvenile records without mentioning in each instance that there may in fact be no such records.

4. The superior court characterized Cockerham's motion as a "fishing expedition," noting that it was "simply speculation" to suggest that there were any juvenile delinquency records and also speculation that there might be an adjudication for a crime involving dishonesty.

At the conclusion of the sentencing hearing the superior court found by clear and convincing evidence that both D.O. and R.E. had been sexually assaulted by Cockerham.[5] The superior court thus determined that the two aggravating factors alleged by the State—repeated assaultive behavior and similar prior misconduct—had been established.[6] Accordingly, Cockerham was sentenced to sixteen years with three years suspended.[7]

Cockerham appealed the superior court's failure to order the production of R.E.'s juvenile record for *in camera* review and asserted that he was entitled to resentencing. The court of appeals rejected Cockerham's claim, concluding that whatever rights he might have had to confront sentencing witnesses were waived when he refused to submit to cross-examination and offered no evidence to refute the witness' testimony.[8] Cockerham subsequently petitioned this court for a hearing. We granted the petition on the issue of whether the trial court's failure to conduct an *in camera* review of R.E.'s juvenile records violated Cockerham's constitutional rights.

## III. DISCUSSION [9]

### A. Right of Confrontation [10]

Cockerham's confrontation clause claim is based on the United States Supreme Court's ruling in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). *Davis* held that the Sixth Amendment right

---

5. AS 12.55.155(f) provides that if the State seeks to establish a factor in aggravation, it must do so by clear and convincing evidence before the court sitting without a jury. All findings must be set out with specificity.

6. AS 12.55.155(c)(8) & (21) read:
 **Factors in aggravation and mitigation.**
 . . . .
 (c) The following facts shall be considered by the sentencing court and may aggravate the presumptive terms set out in AS 12.55.125:
 . . . .
 (8) the defendant's prior criminal history includes conduct involving aggravated or repeated instances of assaultive behavior;
 . . . .
 (21) the defendant has a criminal history of repeated instances of conduct violative of criminal laws, whether punishable as felonies or misdemeanors, similar in nature to the offense for which the defendant is being sentenced under this section[.]

7. This sentence is an upward departure from the presumptive sentence of five years for a first sexual assault conviction. AS 12.55.125(i)(1).

8. The court of appeals stated:
 In *Hamilton v. State*, 771 P.2d 1358 (Alaska App.1989), this court recognized that criminal defendants have a conditional right at sentencing to require the State to bring its witnesses to court so that they may be cross-examined. *Compare Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 92[93] L.Ed. 1337 (1949) (a criminal defendant's Sixth Amendment right of confrontation does not extend to sentencing hearings) and Alaska Evidence Rule 101(c) (the Alaska rules of evidence limiting the use of hearsay do not apply at sentencing hearings). Under *Hamilton*, the State must produce its sentencing witnesses (or prove their unavailability and their veracity) if the defendant "denies the allegations under oath and submits to cross-examination". *Hamilton*, 771 P.2d at 1362.
 Cockerham took the stand at sentencing and entered cursory denials of D.O.'s and R.E.'s allegations. However, he then refused to submit to cross-examination[.]
 . . . .
 . . . . Having refused to submit to cross-examination, Cockerham could no longer claim the right to confront D.O. and R.E. Thus, there was no need for the superior court to examine children's court files for evidence that might be used in cross-examining R.E.
 (Footnote omitted.)

9. We review Cockerham's claims *de novo*. Though we generally review rulings on discovery for an abuse of discretion, *Gunnerud v. State*, 611 P.2d 69, 72–73 (Alaska 1980), Cockerham's constitutional challenges raise mixed questions of law and fact. In reviewing questions of law, we apply our independent judgment and adopt the rule that is most persuasive in light of precedent, reason and policy. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). To the extent that this appeal involves factual questions, we will reverse only if the superior court's factual findings are clearly erroneous. *Brosnan v. Brosnan*, 817 P.2d 478, 480 (Alaska 1991).

10. A defendant's right to be confronted by witnesses against him is conferred by both the federal and state constitutions. U.S. Const. amend. VI; Alaska Const. art. I, § 11. The existence of this federal constitutional right at sentencing proceedings is debatable, and its scope under our state constitution limited. *See, e.g., United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir.1993), *cert. denied*, 510 U.S. 1040, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994); *United States v. Fatico*, 579 F.2d 707, 711 (2d Cir.1978); *Nukapigak v. State*, 576 P.2d 982 (Alaska 1978); *Pickens v. State*, 675 P.2d 665 (Alaska App.1984).

of confrontation requires that a criminal defendant be allowed to impeach the credibility of a prosecution witness by cross-examination as to bias stemming from the witness' probationary status as an adjudicated juvenile delinquent. The court recognized the State's interest in preserving the confidentiality of juvenile delinquency proceedings but concluded that the right of confrontation is "paramount to the State's policy of protecting a juvenile offender." *Id.* at 319, 94 S.Ct. at 1112.

Cockerham suggests that *Davis* and its progeny stand for the proposition that relevant information may not be withheld from a defendant by virtue of its inclusion in juvenile files. He argues that, in this case, the superior court could not ascertain whether R.E.'s records contained any evidence relevant to her impeachment without conducting an *in camera* review. Cockerham thus claims that the superior court's failure to grant his discovery motion effectively deprived him of his constitutional right of confrontation.

The State disagrees with the proposition that under *Davis* and its progeny Cockerham has a constitutional right to *in camera* review of R.E.'s juvenile record at sentencing, and contends that a defendant's trial right to confront prosecution witnesses does not extend to sentencing hearings. This disagreement with Cockerham's constitutional arguments is premised on the fact that only attenuated protections are accorded defendants at sentencing proceedings and, moreover, that "important policies ... justify distinguishing sentencing proceedings from pretrial and trial proceedings."[11]

We need not decide the precise contours of a defendant's confrontation right at sentencing to conclude that Cockerham's challenge fails. The essence of Cockerham's argument is that the superior court's refusal to review R.E.'s juvenile file potentially deprived him of relevant impeachment evidence upon which he could have relied in cross-examining the State's aggravating factors witnesses. Though the range of information at a defendant's disposal might well affect the scope of cross-examination, we affirm the proposition that inquiries into access to and use of relevant impeachment evidence are distinct.

The United States Supreme Court recognized the significance of this distinction in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), where it held that the federal confrontation clause was not violated by the State's failure to disclose the contents of a victim's juvenile file to a defendant before trial. In so doing the court differentiated between restricting a defendant's reliance on information he possesses to impeach a prosecution witness, and preventing a defendant from gaining access to such information. *Ritchie* clarified that the constitutional error in *Davis* was not that the State kept potentially relevant information from the defendant, but that defense counsel was prohibited from questioning the witness about this information.[12] The *Ritchie* court emphasized that the confrontation clause is not, and should not be transformed into a

> constitutionally compelled rule of pretrial discovery. Nothing in the case law supports such a view. The opinions of this Court show that the right to confrontation is a *trial* right, designed to prevent improper restrictions of the types of questions that defense counsel may ask during

**11.** *See Nukapigak v. State*, 576 P.2d 982, 984 (Alaska 1978) (accepting the use of verified hearsay information at sentencing); Alaska Evidence Rule 101(c)(2) (evidence rules not applicable to sentencing proceedings); *Elson v. State*, 633 P.2d 292 (Alaska App.1981), *aff'd*, 659 P.2d 1195 (Alaska 1983).

**12.** The *Ritchie* court reasoned:
> The lower court's reliance on *Davis v. Alaska* therefore is misplaced. There the state court had prohibited defense counsel from questioning the witness about his criminal record, even though that evidence might have affected the

> witness' credibility. The constitutional error in that case was *not* that Alaska made this information confidential; it was that the defendant was denied the right "to expose to the jury the facts from which the jurors ... could appropriately draw inferences relating to the reliability of the witness." Similarly, in this case the Confrontation Clause was not violated by the withholding of the [juvenile] file; it only would have been impermissible for the judge to have prevented Ritchie's lawyer from cross-examining the [witness].
>
> *Ritchie*, 480 U.S. at 54, 107 S.Ct. at 1000.

cross-examination .... The ability to question adverse witnesses, however, does not include the power to require the pre-trial disclosure of any and all information that might be useful in contradicting unfavorable testimony.... Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses.

*Id.* at 52–53, 107 S.Ct. at 999 (emphasis in original, citations omitted).

Cockerham has not claimed that the superior court unduly restricted the scope of his cross-examination of R.E. at the sentencing proceedings. It is evident that "defense counsel receive[d] wide latitude" to question her.[13] We thus conclude that whatever constitutional right to confront R.E. Cockerham may have possessed was not violated by the superior court's denial for *in camera* review.

### B. *Right to Due Process*

■ In assessing the merits of Cockerham's claim that he was denied due process, we start from the undisputed proposition that due process requirements are applicable to sentencing procedures.[14] *See Williams v. New York*, 337 U.S. 241, 252 n. 18, 69 S.Ct. 1079, 1085 n. 18, 93 L.Ed. 1337 (1949); *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). At issue in this case is the scope of these process requirements at sentencing and, in particular, at

sentencing hearings in which the State is alleging the presence of aggravating factors.[15]

In the pre-trial context, we have recognized that due process rights protect a defendant's access to State's evidence. In *Braham v. State*, 571 P.2d 631 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978), we analyzed a court's failure to allow the defense pre-trial discovery of materials already inspected *in camera* under the "harmless beyond a reasonable doubt" standard for constitutional errors. In so doing, we emphasized the importance of a defendant's right to show bias on the part of a witness testifying against him:

[I]t is essential to a defendant's right to a fair trial that he be allowed every opportunity to show bias on the part of a witness testifying against him. If Braham's counsel was unduly limited in his right of cross-examination to show bias on [the witness'] part by the failure of the state to produce the documentary material referred to, then there must be a reversal and a new trial.

*Id.* at 645.

Similarly, in *Ritchie* the United States Supreme Court held that due process mandates *in camera* review of juvenile records for a pre-trial determination of whether information contained therein is material to the defense of the accused.[16] *See Ritchie*, 480 U.S. at 57–61, 107 S.Ct. at 1001–03. The Supreme

---

**13.** As the court of appeals noted, Cockerham was afforded the opportunity to confront R.E. R.E. took the stand at Cockerham's sentencing and was cross-examined by Cockerham's attorney. Even though no court order prevented him from doing so, Cockerham's attorney refrained from asking R.E. any question relating to her prior involvement with the court system or the reason why she had a guardian ad litem. That is, Cockerham failed to take advantage of this potential avenue for making a more specific showing that there was a need to examine any children's court record pertaining to R.E.

**14.** A defendant's right not to be deprived of liberty without due process of law is guaranteed by both the federal and Alaska constitutions. U.S. Const. amend. XIV, § 1; Alaska Const. art. I, § 7.

**15.** As we have noted, AS 12.55.155 and Criminal Rule 32.1(c) require the State to serve written notice on the defendant if it seeks to establish a

factor in aggravation at sentencing. Criminal Rule 32.1 further requires that specific procedures be followed once such notice has been given.

Where a defendant disputes the State's allegations, the sentencing hearing features a fact-finding inquiry that in many respects resembles a mini-trial. Even more fundamentally, a defendant's liberty interest is enhanced when proof of the presence of aggravating factors dramatically increases the likelihood the defendant will receive a sentence in excess of the applicable presumptive sentence.

**16.** The State correctly notes that *Ritchie* and *Braham* concern the scope of pre-trial discovery. While this suggestion is valid, the State does not deny that due process applies to sentencing proceedings, and to the extent that *Ritchie* and *Braham* shed light on the meaning of due process, we believe their holdings are relevant to the case at bar.

Court concluded that unless the State's non-disclosure was harmless beyond a reasonable doubt, the defendant was entitled to a new trial if the files contained relevant material. *Id.* at 58, 107 S.Ct. at 1001–02.

■ This reasoning, like our own in *Braham,* is rooted in a recognition of the importance of discovery to a defendant's right to a fair trial in accordance with due process. The defendant's liberty interest at sentencing is sufficiently weighty to implicate fairness and truth, ideals that are integral to the trial process. Moreover, the right to be sentenced on the basis of accurate information, always compelling, is especially so when the presence of aggravating factors—and with it the possibility of a substantial sentence enhancement—is at issue.[17]

Other courts have reached similar conclusions with respect to the importance of discovery at sentencing. For instance, the court in *United States v. Rosa,* 891 F.2d 1063 (3d Cir.1989), in holding the discovery provisions of the federal Jencks Act apply to sentencing hearings, based its decision in part on the critical nature of sentencing proceedings:

> [T]he defendant's only hope was to attack the credibility of the Government agents by attempting to impeach them with their prior statements and reports. Without this limited weapon, the defendant remained virtually defenseless. Nor could the defendant rely on a subsequent trial to rectify any inaccurate findings. Unlike a pre-trial hearing, which may be followed by a trial at which the defendants [sic] is afforded full procedural protections, sentencing is the end of the line. The defendant has no opportunity to relitigate factual issues resolved against him.

*Id.* at 1078.

Similarly, in *State v. Donahoe,* 118 Ariz. 37, 574 P.2d 830 (App.1977), the court held that a defendant had a right to discover the written report of a police witness at sentencing, in order to guarantee effective cross-examination. The court noted that while the trial court need not follow strict rules of evidence at sentencing hearings, "such hearings must be conducted consistent with basic concepts of fairness, justice, and impartiality." *Id.* 574 P.2d at 839.

In *People v. Mitchell,* 11 Cal.Rptr.2d 400 (1992), the court directed the trial judge to compel reciprocal discovery of materials relevant exclusively to the penalty phase of a felony murder prosecution. In holding that the statute governing reciprocal discovery applies to sentencing, the court noted:

> [T]he [California] Supreme Court has said that general discovery principles apply to the penalty phase. . . . No appellate court to the present has distinguished the penalty and guilt phases of a criminal trial for discovery purposes.
>
> . . . .
>
> There are cases holding that sentencing hearings differ from trials in some respects. For instance, strict evidentiary rules do not always apply at sentencing hearings and rules of procedure may differ. . . . *However, the fact that sentencing procedures may differ from procedures at the guilt phase does not necessarily imply anything about discovery rights, except perhaps that they may be even broader at the sentencing phase,* given the relaxation of traditional strict rules of evidence at that point.

*Id.* at 402–04 (emphasis added, citations omitted).

We are in agreement with the general principle endorsed by these holdings. The liberty interest implicated at sentencing under Article I, section 7 of the Alaska Constitution requires that in order for the guarantee of due process to be meaningful, it must

---

17. *See* American Bar Association, *Standards for Criminal Justice* § 18–6.4–.5 (1986). The Commentary states that

> the guiding principle of standard 18–6.4(b) [governing sentencing hearings] is that the parties should be provided "an effective opportunity . . . to rebut all allegations likely to have a significant effect." This standard is intended

to give the sentencing court considerable discretion and does not foreclose the granting of some discovery preparatory to the sentencing hearing in a situation, for example, where the court recognizes that the testimony of a key witness may have a significant effect.

*Id.* at 478–79.

at times encompass discovery rights.[18] We thus conclude that in a given factual context a denial of discovery at the sentencing stage of a criminal proceeding can result in a violation of due process under Alaska's constitution.

 The defendant's right to access information, however, is not absolute. In this case, Cockerham failed to make a showing sufficient to trigger a right to discovery.[19] The connection between the fact there was a warrant out for R.E.'s arrest as a runaway and the possibility she might have a juvenile record containing information tending to impeach her testimony that she was sexually assaulted by Cockerham is highly tenuous. Because Cockerham's attorney neglected to cross-examine R.E. on any subject related to credibility, any error on the part of the superior court in denying the motion for *in camera* review of the juvenile records did not deny Cockerham due process under Alaska's constitution.[20]

This conclusion is buttressed by the court's characterization of the request as a "fishing expedition."[21] Because Cockerham failed to

---

**18.** As presently promulgated, our Criminal Rules of Procedure contain the following provisions which are arguably relevant to sentencing proceedings. Criminal Rule 16(b)(1)(A)(v) provides in part:

> [T]he prosecuting attorney shall disclose the following information within the prosecuting attorney's possession or control to defense counsel and make available for inspection and copying:
>
> . . .
>
> (v) Any record of prior criminal convictions of the defendant and of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial.

Subsection (b)(3) of Criminal Rule 16 further provides that

> [t]he prosecuting attorney shall disclose to defense counsel any material or information within the prosecuting attorney's possession or control which tends to negate the guilt of the accused as to the offense or would tend to reduce the accused's punishment therefor.

Criminal Rule 32.1(d)(1)(B), setting forth the procedure for disputing information to be relied upon by the opposing party at sentencing, requires that each party file

> notice of objection to any information in the presentence report or in any other material the judge or opposing party has identified as a source of information to be relief on at sentencing on the ground that such information is insufficiently verified or is inaccurate. For each item a party contests as inaccurate, that party shall submit an affidavit from the party or another witness with personal knowledge outlining the testimony the witness is prepared to provide to refute or to explain the allegation, or a notice that the party has served or attempted to serve a subpoena upon the person who provided the contested information and intends to examine the person at the presentencing hearing.

**19.** *See Dana v. State*, 623 P.2d 348 (Alaska App. 1981) (holding that defendant was not entitled to discovery of an undercover officer's personnel file). The court stated:

> [Defense counsel] did not make any showing that the material he wanted from the personnel file would be more than a fishing expedition for unspecified material for impeachment. This is not a sufficient showing to require the trial court to locate the personnel file in the middle of trial, review it *in camera*, and determine if any information had relevance.

*Id.* at 355. In so holding, the court of appeals relied in part on the reasoning of *People v. Gissendanner*, 48 N.Y.2d 543, 423 N.Y.S.2d 893, 399 N.E.2d 924 (1979), which stated that discovery of confidential files

> has been denied in cases in which the defendant failed to demonstrate any theory of relevancy and materiality, but, instead, merely desired the opportunity for an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable him to impeach the witness.

*Id.* 423 N.Y.S.2d at 897, 399 N.E.2d at 928 (citations omitted).

**20.** In *Franzen v. State*, 573 P.2d 55, 56 (Alaska 1978), we similarly held that a defendant was "foreclosed from attacking the court's reliance" on hearsay contained in his presentence report, "having failed to exercise his right to present any materials or call any witnesses to contradict, explain or otherwise rebut that information." *Id.* at 56. *See Nukapigak v. State*, 562 P.2d 697, 701 (Alaska 1977), *aff'd* 576 P.2d 982 (Alaska 1978).

**21.** The superior court further stated:

> [T]his is a motion to gain access to any juvenile delinquency records which may exist concerning the potential witness R.E. As I understand the filings, it's simply speculation ... that there are juvenile proceedings. And if there are juvenile proceedings, [it is speculation] that [they] may have involved [a delinquency] adjudication, and if there is an adjudication, that it might have involved a charge involving dishonesty which would make it possibly available for impeachment purposes of the witness. And furthermore, speculation that [the proceeding] might involve anything else that would be relevant to [R.E.'s] credibility.

make a sufficient showing that the records he requested would contain relevant impeachment evidence, and subsequently failed to cross-examine the witness on any matter relating to credibility, his constitutional right to due process under Article I, section 7 of the Alaska Constitution was not violated by the superior court's denial of his motion.

## IV. *CONCLUSION*

We AFFIRM the court of appeals' decision upholding the superior court's denial of Cockerham's motion for *in camera* review of R.E.'s juvenile record.